IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

**CIVIL ACTION NO. 6:19-CV-290 (WOB-CJS)**

**MARLON JERMAINE JOHNSON,**                                               **PLAINTIFF,**

VS.                      **MEMORANDUM OPINION AND ORDER**

**KEVIN SPEAKS,**                                                          **DEFENDANT.**

This is a *pro se* prisoner civil rights action brought by Marlon Jermaine Johnson against Kevin Speaks. Currently before the Court is Defendant's Motion for Summary Judgment.[1] (Doc. 72). The Court has carefully reviewed this matter and, being advised, now issues the following Memorandum Opinion and Order.

### *Factual and Procedural Background*

On January 26, 2019, Plaintiff Johnson was incarcerated as a pretrial detainee at the Pulaski County Detention Center ("PCDC") in Somerset, Kentucky. (Doc. 72-1 at 1–2; Doc. 72-2, Johnson Dep. at 18:14–17). That morning, Johnson "was served sugarless oatmeal for breakfast instead of the regular oatmeal he'd been receiving."

---

[1] Plaintiff has also filed an Amendment to his Response to Defendant's Motion for Summary Judgment. (Doc. 75). Further, Defendant has filed a Motion to Strike both Plaintiff's Amended Response and a second response Plaintiff filed after Defendant filed his Reply in Support of the Motion for Summary Judgment. (Doc. 79). Given the *pro se* status of the Plaintiff, the Court finds that he is entitled to some leeway in presenting his arguments. Therefore, the Court will grant Plaintiff's Motion to Amend and deny Defendant's Motion to Strike.

1

(Doc. 1 at 6). Johnson notified two correctional officers of the issue, including Defendant Speaks,[2] and requested that they call the facility kitchen. (*Id.*). Johnson also asked Speaks why there were no condiments on his tray and Speaks responded by instructing Johnson to file a grievance. (*Id.*; Doc. 72-1 at 2). Johnson requested to speak to the sergeant on shift but Speaks "made no attempt to call [him.]" (Doc. 1 at 6–7; Doc. 72-1 at 2).

Speaks later returned to Johnson's cell to pick up the food trays and the incident that followed was captured on PCDC's surveillance cameras.[3] (Doc. 72-1 at 2–3). At 6:56:30 a.m., Speaks opened Johnson's cell door and placed the cart containing the food trays in the doorway between them. (Doc. 67, Apod Main). Johnson can be seen standing at the cell door behind the cart, where he continued to raise questions about his food tray. (*Id.*). At 6:56:36 a.m., Johnson told Speaks that he needed to speak to the sergeant,

---

[2] The Complaint erroneously referred to Defendant Speaks as "C/O Beats." The Court permitted Johnson to replace "C/O Beats" with "Kevin Speaks" after the relevant incident report was filed into the record. (Doc. 21).
[3] Two video files were filed conventionally with the Court. (Doc. 67). The "Apod Main" Camera captured both audio and video of the incident from outside Plaintiff's cell. (*See* Doc. 72-1 at 3). The "Apod 158" Camera captured video only from inside Plaintiff's cell. (*See id.* at 3 n.4). The parties do not dispute that the Court may properly consider the video footage. (Doc. 72-1 at 8; Doc. 75 at 2–3). Further, the Supreme Court found that a video may be considered at the summary judgment stage, particularly where it contradicts a version of the facts as told by one of the parties. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *see also Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008) (finding that *Scott* "instructs us to determine as a matter of law whether the events depicted on the video, taken in the light most favorable to [the plaintiff], show that the Officers' conduct was objectively reasonable.").

to which Speaks responded by pointing to a kiosk in the cell behind Johnson and telling him that he should "send an email" to file a grievance. (*Id.*; Doc. 72-1 at 3).

At 6:56:54 a.m., Johnson asked Speaks, "Why do you keep pointing at me?" (Doc. 67, Apod Main; Doc. 72-1 at 3). At 6:56:56 a.m., Speaks told Johnson, "I'm going to put your ass over in that cell." (Doc. 67, Apod Main). Johnson responded with something that sounded like "Don't talk to me like that." (*Id.*).

At 6:57:01 a.m., Speaks moved the food tray cart out of the doorway and withdrew his taser. (*Id.*). Johnson backed away from the door at 6:57:03 a.m. (*Id.*, Apod Main, Apod 158). At 6:57:04 a.m., Speaks asked, "Do you want to go?" (*Id.*, Apod Main). Johnson responded by backing up further into the cell and saying, "Come on, man." (*Id.*, Apod Main, Apod 158). At 6:57:07 a.m., Speaks told Johnson to get on the ground. (*Id.*; Doc. 72-1 at 3). At 6:57:10 a.m., the laser indicating the taser's target can be seen on Johnson's chest. (Doc. 67, Apod 158).

Speaks twice more told Johnson to get on the ground at 6:57:11 a.m. and 6:57:13 a.m. (*Id.*, Apod Main). Johnson did not get on the ground, but instead responded by asking, "And do what?" (*Id.*, Apod Main, Apod 158). Johnson also made a gesture with his hands, but it is unclear what the intention behind that gesture was. (*Id.*). However, Johnson did not physically move forward. (*Id.*). At 6:57:14

3

a.m., Speaks fired his taser and Johnson collapsed. (*Id.*). Speaks immediately handcuffed Johnson and escorted him out of the cell for medical treatment. (*Id.;* Doc. 72-1 at 3). From the time Speaks opened the cell door until the time that the taser was fired, forty-four seconds elapsed. (Doc. 67).

On December 11, 2019, Johnson filed a *pro se* complaint alleging several causes of action against several defendants employed at PCDC. (Doc. 1). This Court conducted an initial screening of the complaint and concluded that only Johnson's claim under 42 U.S.C. § 1983 against Defendant Speaks for using excessive force could proceed. (Doc. 10).

### ***Analysis***

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "In determining whether there exists a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." See *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is

4

inappropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.*

### A. Qualified Immunity

Johnson's § 1983 claim against Speaks for use of excessive force must be analyzed under the framework of the qualified immunity doctrine. "Qualified immunity protects state actors performing discretionary functions from liability under § 1983 unless 1) their conduct violated a federal statutory or constitutional right, and 2) the unlawfulness of their conduct was clearly established at the time." *Young v. Kent Cnty. Sheriff's Dep't*, No. 21-1222, 2022 WL 94990, at *4 (6th Cir. Jan. 10, 2022) (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). Courts can examine the two prongs in any order and a government official is entitled to qualified immunity if either is not satisfied. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

#### i. Constitutional Violation

Under the first prong of qualified immunity analysis, the Court must identify "the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Use of excessive force on pretrial detainees is measured under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment,

5

which applies only to convicted prisoners. *Young*, 2022 WL 94990, at * 4 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Accordingly, the relevant inquiry is only whether the officer's purposeful or knowing use of force was objectively unreasonable, and the subjective prong of the Eighth Amendment analysis does not apply to pretrial detainees.[4] *See Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 606 (6th Cir. 2022) (citing *Kingsley*, 576 U.S. at 391–92, 400).

"The inquiry is highly fact-dependent, and must take into account the 'perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, (6th Cir. 2015) (quoting *Kingsley*, 576 U.S. at 397). The analysis should also account for the government's need to manage the facility and defer when appropriate to practices necessary "'to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*, 576 U.S. at 397 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). In determining the reasonableness of the force used, courts should consider the totality of the circumstances, including factors such as the

---

[4] Although Defendant spends several pages in his Motion for Summary Judgment on the issue of whether Plaintiff has met the subjective prong of the excessive force analysis, (*see* Doc. 72-1 at 7–10), the subjective prong has not applied to a pretrial detainee's claim since the Supreme Court's decision in *Kingsley* over seven years ago.

relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the defendant to limit the amount of force; the severity of the problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Id.* (citing *Graham*, 490 U.S. at 396).

Here, Speaks focuses on the fact that Johnson "did not suffer extensive injury as a result of the Defendant's taser use." (Doc. 72-1 at 8). Although Johnson testified that he was in pain following the incident, (Doc. 72-2, Johnson Dep. at 52:6–10), he does not allege that he has suffered any lasting injury. Further, Johnson's allegation that Speaks "roughly removed the taser wire from [his] chest," (Doc. 1 at 8), is insufficient to sustain an excessive force claim. *See, e.g.*, *Hedges v. Back*, No. 5:20-CV-509-JMH-HAI, 2021 WL 7083121, at *5 (E.D. Ky. Dec. 10, 2021), *report and recommendation adopted*, 2022 WL 507429 (E.D. Ky. Feb. 18, 2022) (finding that the plaintiff did not establish a constitutional violation based on an allegation that taser prongs were "ripped out").

However, that does not end the inquiry. *See Coley*, 799 F.3d at 539 (finding that "the inquiry . . . focuses on the force itself rather than the injury."). Regarding the severity of the issue and the threat reasonably perceived by the officer, the video shows

7

that, contrary to Speaks's argument that Johnson "stepped up to the tray cart as though he was going to come out of the cell toward the Defendant," (Doc. 72-1 at 4), Johnson did not move toward the door or Speaks at any time and, further, could not have exited the cell to reach Speaks while the cart blocked the doorway.[5] Although Defendant makes much of the fact that there was "not much space" between the parties, (*Id.* at 3), in fact, Johnson backed up twice, moving further into his cell and creating more space between them in response to Speaks's actions, including his removal of the cart, which had been a barrier. As such, it is not at all apparent from the video that Johnson posed any threat to Speaks's safety.

Speaks also notes that he only pulled the taser trigger once, which caused a five-second shock. (*Id.* at 5; Doc. 72-3, Speaks Aff. ¶ 10). Although this is contrary to Johnson's allegation that Speaks "continuously squeez[ed]" the trigger after he fell to the ground, (Doc. 1 at 7-8), the video supports Speaks's contention. However, Johnson argues that, because he was inside the cell, Speaks could have "simply just shut the door and moved on to the next unit and continue[d] picking up trays." (Doc. 72-2, Johnson Dep. at 42:15-17). "But instead, he moved the food cart out of the

---

[5] Although Johnson does appear to be in the "red box," which is an area inmates are instructed not to be in unless directed by a jail officer, (Doc. 72-1 at 4), at the beginning of the video, he necessarily had to be in order to stack the trays on the food cart, as was customary at the facility. (Doc. 75 at 2). However, the video unequivocally indicates that Johnson was not in the "red box" at the time he was tased.

8

way, [and] entered the unit." (*Id.* at 62:15-16). Thus, it is not clear, as a matter of law, whether Speaks made efforts to limit the amount of force used because a reasonable jury might conclude that no force was necessary to resolve the issue or to maintain institutional order and security.

The parties agree, and the video shows, that Johnson did not comply with Speaks's repeated command for him to "get on the ground." (Doc. 72-1 at 4). However, in the Sixth Circuit, "noncompliance alone does not indicate active resistance; there must be something more." *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013). In order to deem a plaintiff's failure to comply with an officer's commands "active resistance," such that use of a taser is justified, there must also be a verbal showing of hostility or a deliberate act of physical defiance. *Id.* at 533, 535 (finding taser use not justified where a plaintiff failed to comply with officers' repeated demands for him to get out of the car); *see also Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 94, 96-97 (6th Cir. 2012) (finding active resistance where a suspect actively refused to move his arms from underneath his body after stating that he would "fight the officers so that they would have a reason to kill him"); *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 507, 511 (6th Cir. 2012) (finding an officer's use of a taser justified where a suspect resisted arrest by locking his arms under his body while kicking and screaming); *Foos v. City*

9

*of Delaware*, 492 F. App'x 582, 584-86, 590 (6th Cir. 2012) (finding that officers' taser use was reasonable because the suspect had actively resisted arrest by refusing to comply with officers' commands after being hostile and revving his vehicle).

Here, the video shows no evidence that Johnson physically or verbally threatened Speaks. Much as in *Eldridge*, where the Court concluded that "the only individuals conveying any sense of aggression were the two officers," here, Speaks was the one who moved the cart out of the way and asked Johnson, "Do you want to go?" *See* 533 F. App'x at 535. Johnson responded by backing up twice, saying, "Come on, man," and questioning Speaks's command by asking, "And do what?" None of Johnson's acts appear to be deliberate verbal or physical acts of defiance. As such, under Sixth Circuit precedent, a reasonable jury could find that Johnson was not actively resisting Speaks's commands.

Therefore, because the evidence viewed in a light most favorable to Johnson shows that he did not threaten Speaks's safety and was not actively resisting, a reasonable jury could find that Speaks violated Johnson's right to be free from excessive force under the Due Process Clause of the Fourteenth Amendment.

*ii. Clearly Established*

Under the second prong of the qualified immunity doctrine, a right is "clearly established" if "[t]he contours of the right

10

[are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Sixth Circuit has held that there is a clearly established right "to be free from the use of physical force when [a plaintiff] is not resisting police efforts to apprehend him." *Eldridge*, 533 F. App'x at 535. "A suspect's active resistance . . . marks the line between reasonable and unreasonable tasing . . . ." *Hagans*, 695 F.3d at 509–10 (collecting cases from within and outside of the Sixth Circuit). As such, where a pretrial detainee plaintiff's "resistance was passive, not active, the use of a taser against him would be a violation of his clearly established constitutional rights." *Young*, 2022 WL 94990, at *1, *6.[6]

Because a reasonable jury could conclude that Johnson's resistance was passive, such a conclusion would also dictate that when Speaks tased Johnson, he violated Johnson's clearly established constitutional right.

---

[6] Although the Sixth Circuit's opinion in *Young* was issued in 2022 and the relevant events in this case occurred in January 2019, *Young* is nonetheless illustrative on the issue of whether Speaks violated a clearly established right. The events in that case occurred just one month after the events in this case and the Sixth Circuit affirmed the district court's denial of qualified immunity. *See Young*, 2022 WL 94990, at *1, *6. Further, the *Young* court relied on cases from 2012 and 2014 for its determination that use of a taser violates the clearly established constitutional rights of a pretrial detainee who is merely passively resisting. *See id.* at *6 (citing *Eldridge*, 533 F. App'x at 533–34; *Hagans*, 695 F.3d at 509).

11

**B. Official Capacity Claims**

As Speaks notes, it is unclear from Johnson's complaint whether he is asserting any official capacity claims. (*See* Doc. 1; Doc. 72-1 at 12). Official capacity suits are functionally the same as pleading an action against the entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Accordingly, if any official capacity claims are asserted against Speaks, they would be treated as claims against Pulaski County, Kentucky.

Congress only intended for counties to be liable when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. To show such a policy, the plaintiff "must point to a municipal 'policy or custom' and show that it was the 'moving force' behind the constitutional violation." *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (quoting *id.* at 694).

Here, Johnson has not alleged any facts which illustrate a policy or custom implemented or endorsed by Pulaski County that would have led to the incident at issue. There is no evidence that Pulaski County instructed its correctional officers to behave as Speaks did or failed to train them on the proper use of a taser.

As such, to the extent Johnson is asserting any official capacity claims against Speaks, those must fail as a matter of law.

## *Conclusion*

Therefore, for the reasons stated above, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. 72) be, and is hereby, **GRANTED** as to any official capacity claims, and **DENIED** as to the individual capacity claim against him;

(2) Plaintiff's Motion to Amend his Response (Doc. 75) be, and is hereby, **GRANTED**; and

(3) Defendant's Motion to Strike Plaintiff's Sur-Replies (Doc. 79) be, and is hereby, **DENIED**.

This 2nd day of November 2022.



Signed By:
*William O. Bertelsman* WOB
United States District Judge